IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **LH DINING L.L.C.,** doing business as **RIVER TWICE RESTAURANT** | : : : | No. 2:20-CV-01869-TJS |
| Plaintiff, | : : | CIVIL ACTION |
| v. | : : : | |
| **ADMIRAL INDEMNITY COMPANY** | : : | |
| Defendant. | : : | |

**REPLY IN SUPPORT OF ADMIRAL INDEMNITY COMPANY'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

Eric A. Fitzgerald, Esquire
Attorney ID No.: 72590
Hillary N. Ladov, Esquire
Attorney ID No.: 315833
GOLDBERG SEGALLA LLP
1700 Market Street, Suite 1418
Philadelphia, PA 19103
267-519-6800
efitzgerald@goldbergsegalla.com
hladov@goldbergsegalla.com

Antonia B. Ianniello (admitted pro hac vice)
John F. O'Connor (admitted pro hac vice)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
202-429-3000
aianniello@steptoe.com
joconnor@steptoe.com

**Attorneys for Defendant
Admiral Indemnity Company**

I.       **INTRODUCTION**

Plaintiff's opposition lays bare all of the reasons why the Court should dismiss the First Amended Complaint ("FAC").  Plaintiff argues that the Court should stay a decision on Admiral's motion so that plaintiff can take discovery, but there are no issues of fact to be developed here. Accepting plaintiff's factual allegations as true, it is clear that plaintiff's claim is not covered by Admiral's Policy as a matter of law.  Discovery cannot change that.

Plaintiff's opposition takes a scattershot approach to the Policy's Virus Exclusion, arguing alternatively that the exclusion is ambiguous, or simply does not apply, or that the Court should refuse to enforce it based on an unsupported theory of regulatory estoppel.  None of these arguments can overcome the exclusion's application to plaintiff's claimed losses.  Nor can Plaintiff be allowed to rewrite the terms of the governmental orders issued by state and local officials to shoehorn its way into Civil Authority coverage.  The actual terms of those orders, and not what plaintiff wishes they said, make clear that the elements of this coverage have not been satisfied. Finally, plaintiff argues that it has sufficiently pleaded a claim for Business Income and Civil Authority coverage, while ignoring that it has not alleged direct *physical* loss of or damage to its own property or any property within the required radius of the Civil Authority coverage.  For all of these reasons, the Court should grant Admiral's motion.

A.       **Admiral's Motion Is Ripe for Decision**

Plaintiff devotes much of its opposition to a plea that the Court "stay" any decision on Admiral's motion so that plaintiff can conduct discovery "to address the many factual issues that the Motion raises."  Pl. Opp. at 2.  Admiral's motion does not raise any disputed factual issues. Admiral's motion involves solely questions of law concerning the interpretation of the Policy that are well within the ken of this Court to decide.  *See In re Old Summit Mfg., LLC*, 523 F.3d 134,

137 (3d Cir. 2008) ("[c]ontract interpretation is a question of law that requires the court to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement"). As for the "facts" necessary to decide this motion, Admiral relies solely on the plain terms of the governmental orders themselves and a handful facts alleged in the FAC. What Admiral has not done, and what the Court is not obliged to do either, is to accept as true plaintiff's legal conclusions, couched as allegations of fact, which are disregarded on a motion to dismiss. *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009).[1]

### B.    The Virus Exclusion Bars Plaintiff's Claims

The Virus Exclusion broadly bars coverage for *loss or damage caused by or resulting from any* virus . . . that induces or is capable of inducing physical distress, illness or disease." Admiral Brief in Support of Motion to Dismiss ("Admiral Br.") (ECF 29), Ex. 3 at 80. Plaintiff concedes that COVID-19 qualifies as a virus within the meaning of the exclusion, but argues that the exclusion is somehow ambiguous or, alternatively, that discovery is needed to determine whether it should be voided based upon regulatory estoppel. These arguments are unavailing.

#### 1.    The Virus Exclusion is Plain and Unambiguous

Plaintiff claims that the Virus Exclusion is ambiguous because it does not contain the word "pandemic" or "exclude anything related to the damages incurred as [a] result of a pandemic." Pl. Opp. at 15. This is pure sophistry at its worst. The exclusion, by its plain terms, applies to loss or damage caused by or resulting from "**any virus**," and that is true whether the virus affects one person, 1,000 people or one million people. *See. Pa. Human Relations Comm'n v. Alto-Reste Park*

---

[1] Plaintiff submits an affidavit from its counsel that is nothing but a pretext for throwing self-serving "facts" into the record that are irrelevant, mischaracterized or worse. The Court should ignore them since only the pleadings and documents referenced in the pleadings are appropriate for consideration on a motion to dismiss.

*Cemetery Ass'n*, 306 A.2d 881, 886 (Pa. 1973) ("[t]he word 'any' means . . . one out of many . . . and is given the full force of 'every' or 'all'"). Where the language of an insurance policy is clear and unambiguous, as here, the court is bound to give effect to that language. *401 Fourth St., Inc. v. Inv'rs Ins. Grp,* 879 A. 2d 166, 171 (Pa. 2005). Nor may courts "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Madison Const. Co. v. Harleysville Mut. Ins. Co.,* 735 A.2d 100, 106 (Pa. 1999).

Alternatively, plaintiff once again attempts to do an end-run around the Virus Exclusion by alleging that the "Civil Authority Orders caused its losses and not the virus itself." Pl. Opp. at 14. Plaintiff never really explains this contention or bothers to respond to Admiral's extensive arguments as to why this is not so. Admiral Br. at 21-23. The plain wording and structure of the policy plainly demonstrates that plaintiff is wrong as a matter of law.

*First,* Plaintiff admits in its FAC that it closed its restaurant "[i]n light of the Coronavirus global pandemic" as well as the governmental orders. FAC ¶ 2. This, in and of itself, is sufficient to satisfy the plain language of the Virus Exclusion that the loss or damage must be caused by or resulting from a virus. Indeed, it is impossible to divorce the governmental orders from the reason they were issued – to "implement measures to mitigate the spread of COVID-19." *See* Gov. Wolf Proclamation dated March 6, 2020 (FAC, Ex. 2 at 1). As Admiral explained in moving to dismiss, and as plaintiff now concedes, *all* of the governmental orders cited by plaintiff explicitly state that they were issued because of the Coronavirus. Admiral Br. at 19. To argue that plaintiff's losses are not "caused by or resulting from any virus," ignores the allegations of the FAC, the terms of all of the governmental orders and reality.

*Second,* the Virus Exclusion explicitly states that it applies to "all forms and endorsements" in the Policy, "including but not limited to forms or endorsements . . . that cover business income,

3

extra expense **or action of civil authority**." Admiral Br., Ex. 3 at 80 (emphasis added). Thus, plaintiff's argument that the exclusion somehow does not apply to civil authority coverage is refuted by its plain terms. Indeed, under plaintiff's interpretation, there would never be a circumstance in which the exclusion would apply to civil authority coverage, because the loss would always be caused by or resulting from the orders themselves rather than the alleged perils giving rise to the orders. Pennsylvania courts have refused to engage in such circular reasoning that would read policy provisions out of the contract. *See Sapa Extrusions Inc. v. Liberty Mut. Ins. Co.,* 939 F.3d 243, 257 (3d Cir. 2019) ("a policy must be construed in a manner as to give effect to all of its provisions"); *Doherty v. Allstate Indem. Co.*, No. 15-05165, 2017 U.S. Dist. LEXIS 52795, * 16 (E.D. Pa. Apr. 6, 2017) (a construction that "neutralizes any provision of a contract" "should never be adopted").

*Third,* the requirements of Civil Authority coverage amply show the fallacies in plaintiff's position. As a matter of law, there is no Covered Cause of Loss in this case because the governmental orders themselves cannot be the Covered Cause of Loss, and neither can COVID-19. Without satisfaction of this element, there is no coverage.

As plaintiff concedes, Civil Authority coverage requires not just a governmental order prohibiting access to plaintiff's property, but an order issued "as a result of" damage to other property within a one-mile radius of the insured premises caused by a "Covered Cause of Loss." Pl. Opp. at 20. The FAC alleges that "the losses caused by COVID-19 and the risk of injury *constitute a covered cause of loss* under the terms of the Policy." *Id.* (emphasis added). Plaintiff cannot have it both ways by contending that the virus is a cause of loss for purposes of Civil Authority coverage but not a cause of loss for purposes of the Virus Exclusion. More to the point,

the Virus Exclusion makes plain that "loss or damage" caused by or resulting from a virus is excluded and, thus, cannot be a Covered Cause of Loss.

Nor can the civil authority order itself be the "Covered Cause of Loss," as such a conclusion would result in a nonsensical reading of the Policy. Characterizing the governmental order as the Covered Cause of Loss would mean that the governmental order was issued because of physical damage to nearby property caused by the governmental order. That preposterous interpretation would turn the Policy on its head. It is precisely for this reason that courts have ruled that the "order of civil authority cannot in any reasonable manner be construed as a peril," covered by the property policy. *See Prime Alliance Group, Ltd. v. Hartford Ins. Co.*, No. 06-22535-CIV-UNGARO, 2017 WL 9703576, at *1,*4 (S.D. Fla. Oct. 19, 2007) ("No matter how much Plaintiffs would like to believe that interruption by civil . . . authority is a separately listed named peril, the structure and language of the policy, when read as a whole, says otherwise"). In short, there is only one reasonable interpretation of the Virus Exclusion and that means that plaintiff's claims are excluded from coverage.

### 2. Plaintiff's "Regulatory Estoppel" Claims Fail as a Matter of Law

Faced with this inevitable conclusion, plaintiff pivots to an alternative theory – that it should be allowed to conduct discovery into so-called regulatory estoppel issues, to show that approval of the "Virus Exclusion" was somehow procured as a result of false and misleading statements by ISO to regulators. FAC ¶ 34. This attack, based upon alleged events occurring in 2006, fares no better than plaintiff's other challenges.

A review of the ISO regulatory filing shows that it is neither misleading nor false:[2]

---

[2] Plaintiff's FAC relies on ISO's 2006 "Amendatory Endorsement – Exclusion of Loss Due to Virus or Bacteria". Plaintiff's opposition even links to that submission. *See*

5

> Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case. In addition, pollution exclusions are at times narrowly applied by certain courts. In recent years, ISO has filed exclusions to address specific exposures relating to contaminating or harmful substances. Examples are the mold exclusion in property and liability policies and the liability exclusion addressing silica dust. Such exclusions enable elaboration of the specific exposure and thereby can reduce the likelihood of claim disputes and litigation.
>
> While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage and to create sources of recovery for such losses, contrary to policy intent.
>
> In light of these concerns, we are presenting an exclusion relating to contamination by disease-causing viruses or bacteria or other disease-causing microorganisms.

Ex. 6 at 6.

As the above filing demonstrates, ISO acknowledged that "[a]n allegation of property damage may be a point of disagreement in a particular case," that the "specter of pandemic" might result in claims, and that exclusions can reduce the "likelihood of claim disputes and litigation." Against these concerns, the ISO presented the exclusion for all virus or bacteria caused losses. In short, there is nothing false or misleading about this filing.

More fundamentally, plaintiff has not pleaded the requisite elements of regulatory estoppel. Under Pennsylvania law, regulatory estoppel applies only when a party makes a representation to

---

https://www.propertyinsurancecoveragelaw.com/files/2020/03/ISO-Circular-LI-CF-2006-175-Virus.pdf (cited at page 34 of plaintiff's opposition). For the Court's convenience, Admiral has attached the filing as Exhibit 6. The Court can consider documents referenced or relied on in the FAC. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

6

regulators and then seeks to take the opposite position in litigation. *Hussey Copper, Ltd. v. Arrowood Indem. Co.*, 391 F. App'x 207, 211 (3d Cir. 2010). In essence, the doctrine prohibits parties from "switching legal positions to suit their own ends." *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1192-93 (Pa. 2001) (holding that regulatory estoppel requires: (1) a statement to a regulatory agency, (2) reliance by the agency on that statement, and (3) a position "opposite to the one presented to the regulatory agency" in later litigation). Moreover, this Court has held that a "requisite level of culpability" is also required. *Simon Wrecking Co. v. AIU Ins. Co.,* 541 F. Supp. 2d 714, 717 (E.D. Pa. 2008).

Even assuming that ISO's actions in 2006 could bind Admiral, plaintiff has not alleged that Admiral has "switched sides" or taken positions in this action that are contrary to the positions taken in the ISO filing. To the contrary, Admiral asserts in this case that there is no direct physical loss of or damage to property, that prevailing law makes this clear, and, additionally, that the Virus Exclusion bars coverage for Plaintiff's losses. The fact that Admiral has not changed positions is fatal to the regulatory estoppel claim as a matter of law. *See Hussey Copper*, 391 F. App'x at 211 (rejecting regulatory estoppel argument for pollution exclusion because "ISO's statements were not so contrary" to the insurers' position as to require estoppel).

### C. Plaintiff's Arguments Regarding Civil Authority Coverage Fail as a Matter of Law

In its Brief, Admiral raised three fundamental defects in plaintiff's Civil Authority coverage claims: First, the governmental orders on which plaintiff relies for its claims did not "prohibit access" to plaintiff's premises within the meaning of the Policy because the orders specifically allowed restaurants to provide take-out, drive through and delivery services. Second, the governmental orders were issued to prevent the future spread of COVID-19 and not because of physical damage to property within one mile of plaintiff's restaurant and in response to

"dangerous physical conditions." Third, plaintiff has not properly alleged physical damage to property within a mile of its restaurant (or even damage to its own property for that matter). A close examination of plaintiff's opposition shows no satisfactory response to these issues.

As to the prohibition of access issue, plaintiff nowhere disputes that the governmental orders specifically allowed its restaurant to remain in operation for take-out and delivery service. Pl. Opp. at 24. Nor does plaintiff distinguish the cases cited in Admiral's brief holding that access must be totally and completely prevented – as one court has said "made impossible" – by the civil authority orders for coverage to attach. *See Commstop v. Travelers Indem. Co. of Conn.,* No. 11-1257, 2012 WL 1883461, at *9 (W.D. La. May 17, 2012).

Indeed, plaintiff curiously cites *Narricot Industries, Inc. v. Firemans Fund Insurance Co.*, No. Civ.A.01-4679, 2002 WL 31247972, at *4 (E.D. Pa. Sept. 30, 2002), for the proposition that Civil Authority coverage can apply when a policyholder "continues to operate in some other, limited capacity." Pl. Opp. at 24. That is not what *Narricot* holds. There, the court held that actions of civil authority "prohibited access" to the policyholder's facility where a town "hand-delivered a letter to each industrial facility, including Narricot, prohibiting it from operating," ***and*** "sent police officers to bar access to" the road on which Narricot's facility was located. *Narricot*, 2002 WL 31247972, at *4. Thus, the civil orders in *Narricot* was the very sort of total prohibition on access required for coverage and is consistent with the cases Admiral cites.

Nor does plaintiff provide an adequate rebuttal to the inescapable conclusion that the governmental orders here were issued to prevent the future spread of COVID-19, and not because of physical damage to nearby property within a mile of the insured premises and dangerous physical conditions resulting from that damage. Plaintiff's rejoinder to this argument is to point to conclusory allegations in the FAC of unidentified "physical impact" "in and around the physical

8

location of the Insured Property due to the difficulty of identifying the presence of COVID-19." FAC ¶¶ 67-68. As an initial matter, this is wholly inadequate to demonstrate the direct physical damage that is required under the Policy.

More to the point, however, the Court should consider the governmental orders themselves in evaluating their purpose. *Ala, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 n.8. (3d Cir. 1994) (a written instrument attached to a pleading should control where its terms are in conflict with the pleading itself). Those orders make clear that they were issued to keep people from coming in contact with each other and not as a response to physical property damage, as one might see in the event of a fire, explosion, or severe weather event. Even plaintiff is forced to admit that preventing and controlling the spread of COVID-19 animates the orders. Pl. Opp. at 21. Nowhere do these orders cite physical destruction of property, much less property within one mile of plaintiff's restaurant, as the reason for their issuance. This case is indistinguishable from the cases cited in Admiral's brief holding that a civil authority order "designed to prevent, protect against or avoid future damage" does not entitle an insured to coverage. *See United Air Lines v, Ins. Co. of State of Pa.*, 439 F.3d 128, 134 (2d Cir. 2006).

Lastly, although plaintiff devotes numerous pages to this effort, nowhere does it adequately plead the type of direct physical loss of or damage to property necessary to make out a claim for coverage – not to its own property and, because plaintiff's claim essentially is for civil authority coverage, not to property within one mile of the restaurant. As the cases cited in Admiral's brief amply demonstrate, the law in this Circuit requires "distinct, demonstrable and physical alteration" of a structure for property coverage to potentially attach. *See, e.g. Port. Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.,* 311 F.3d 226, 235 (3d Cir. 2002). Moreover, in the rare instances where hazardous substances have been deemed a peril under property policies, the Third Circuit has

applied a "heightened standard" requiring such substances to actually contaminate the property **and** make it uninhabitable and unusable. *Id.* at 236. Here, plaintiff specifically disavows any interest in obtaining a declaration that "Coronavirus is physically in or at the property," and even argues that "such a factual determination is unnecessary." Pl. Opp at 36. The governmental orders do not identify *any* contaminated property whatsoever nor require evacuation of any property, much less one within a mile of plaintiff's premises.

In truth, Plaintiff's real grievance stems from purely financial losses as a result of the pandemic, unrelated to direct physical loss or damage. But such losses are simply not covered by commercial property policies. Indeed, the Policy specifically excludes from coverage claims for "loss or damage caused by or resulting from . . . [d]elay, loss of use or loss of market." Ex. 3 at 71; *see also Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) (applying Pa. law) (purely economic damages as a result of loss of use of parking lot not sufficient to trigger coverage). For the reasons contained in this reply as well as Admiral's motion to dismiss and accompanying brief, the Court should dismiss the FAC.

Respectfully submitted,

| **GOLDBERG SEGALLA LLP** | **STEPTOE & JOHNSON LLP** |
|---|---|
| /s/ *Eric A. Fitzgerald* | *Antonia B. Ianniello* |
| Eric A. Fitzgerald, Esquire | Antonia B. Ianniello (admitted pro hac vice) |
| Attorney ID No.: 72590 | John F. O'Connor (admitted pro hac vice) |
| Hillary N. Ladov, Esquire | 1330 Connecticut Avenue, N.W. |
| Attorney ID No.: 315833 | Washington, D.C. 20036 |
| 1700 Market Street, Suite 1418 | 202-429-3000 |
| Philadelphia, PA 19103 | aianniello@steptoe.com |
| 267-519-6800 | joconnor@steptoe.com |
| efitzgerald@goldbergsegalla.com | |
| hladov@goldbergsegalla.com | |

**Attorneys for Defendant Admiral Indemnity Company**